IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RITA J. CADLE, | ) | CASE NO. 5:12 CV 3071 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Rita Cadle appeals[1] under 42 U.S.C. § 405(g) the final decision of the Commissioner of Social Security denying her application for supplemental security income benefits.[2] The Commissioner has filed an answer[3] and the transcript of the administrative record.[4] Under

---

[1] The parties have consented to my exercise of jurisdiction and United States District Judge John Adams has ordered that this matter be transferred to me for further proceedings. ECF # 19.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

my orders[5] the parties have briefed their positions[6] and filed supporting charts[7] and fact sheets.[8] They have participated in a telephonic oral argument.[9]

For the reasons that follow, I will reverse the Commissioner's decision and remand the case for further proceedings.

## Facts

**A.      Background facts and the decision of the Administrative Law Judge ("ALJ")**

Rita Cadle filed the present application for benefits in January 2010,[10] while a prior claim filed in 2007 – and denied by the Commissioner in 2009 – was still under judicial review.[11] Accordingly, although Cadle claimed her onset date for disabilities was January 18, 2007, the ALJ held that current application concerns only the period after June 19, 2009.[12]

---

[5] ECF ## 6, 14, 21, 26.

[6] ECF # 22 (Cadle's brief); ECF # 23 (Commissioner's brief).

[7] ECF # 22, Attachment 1 (Cadle's charts); ECF # 23, Attachment 1 (Commissioner's charts).

[8] ECF # 27 (Cadle's fact sheet).

[9] ECF # 28.

[10] Transcript ("Tr.") at 10.

[11] *See*, *Cadle v. Astrue*, No. 5:10-CV-190, 2011 WL 3289787 (N.D. Ohio July 29, 2011) (affirming the decision of the Commissioner).

[12] Tr. at 10.

At the time she filed the present claim, Cadle was 42 years old and a high school graduate.[13] Although the record shows she had some experience working as a telemarketer and saw operator,[14] the ALJ concluded that she had no past relevant work.[15]

At step two, the ALJ determined that Cadle had severe impairments consisting of fibromyalgia, chronic fatigue syndrome, migraine headaches, obstructive lung disease, asthma and mild emphysema, status - post left thorascopy [sic], chemical and mechanical excision of pulmonary blebs and pleurodesis on June 13, 2000, tobacco abuse, major depression, and generalized anxiety disorder with obsessive-compulsive disorder.[16] That said, however, the ALJ further determined that none of those impairments, nor any combination of impairments, met or medically equaled a listing.[17] The ALJ then concluded that Cadle had the residual functional capacity ("RFC") to perform sedentary work with some qualifications:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant has no restrictions in her ability to push and/or pull (including the operation of hand and/or foot controls), other than as restricted by her limitations on lifting and/or carrying. The claimant may occasionally climb ramps and stairs. She cannot climb ladders, ropes or scaffolds. The claimant may occasionally balance, stoop, kneel, crouch and crawl. She can frequently reach, handle and finger. The claimant can only do occasional overhead reaching. The claimant needs to be able to alternate

---

[13] *Id.* at 20.

[14] *Id.* at 229.

[15] *Id.* at 20.

[16] *Id.* at 12.

[17] *Id.* at 13.

between sitting and standing every thirty minutes, with five minutes in the alternate position at the workstation before resuming the original position of sitting or standing. She needs to avoid work environments of extreme cold, heat and humidity. She must also avoid work environments with vibrations, smoke, dusts, fumes, gases and hazards such as dangerous machinery or heights. She is further limited to understand, remembering and carrying out non-detailed three to four step instructions.[18]

Because Cadle had no past relevant work and, under the RFC, could not be evaluated under the grid, the ALJ, with the assistance of testimony from a vocational expert, found that Cadle, with her RFC, could do the jobs of an order clerk, addresser, and inspector.[19] Thus, the ALJ found Cadle not disabled for the period after the filing of this present application.[20]

**B.    Issues on judicial review**

Cadle essentially raises the following two issues on judicial review:

1.    The ALJ erred in his evaluation of opinion evidence, including that of Cadle's treating physician.[21]

2.    Whether the residual functional capacity (RFC) assessed by the ALJ is sufficient to accommodate Cadle's limitations.[22]

---

[18] *Id.* at 14.

[19] *Id.* at 20-21.

[20] *Id.* at 21.

[21] ECF # 22 at 3.

[22] *Id.*

-4-

# Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[23]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds

could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[23] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[24] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[25]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.   *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[26]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[27]

---

[24] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[25] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[26] 20 C.F.R. § 404.1527(d)(2).

[27] *Id.*

-6-

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[28] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[29]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[30] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[31] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[32] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[33]

In *Wilson v. Commissioner of Social Security*,[34] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[28] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[29] *Id.*

[30] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[31] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[32] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[33] *Id.* at 535.

[34] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[35] The court noted that the regulation expressly contains a "good reasons" requirement.[36] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[37]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[38] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[39] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[40] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[35] *Id.* at 544.

[36] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[37] *Id.* at 546.

[38] *Id.*

[39] *Id.*

[40] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[41]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[42] Second, the ALJ must identify for the record evidence supporting that finding."[43] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[44]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[45] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving

---

[41] *Id.*

[42] *Wilson*, 378 F.3d at 546.

[43] *Id.*

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

-9-

those opinions controlling weight.[46] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[47] or that objective medical evidence does not support that opinion.[48]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[49] The Commissioner's *post hoc* arguments on judicial review are immaterial.[50]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision), an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[46] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[47] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[48] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[49] *Blakley*, 581 F.3d at 407.

[50] *Wooten v. Astrue*, No. 1:09 CV 981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[51]

- the rejection or discounting of the weight of a treating source without assigning weight,[52]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[53]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[54]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[55] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[56]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[57] expressed skepticism about the Commissioner's argument that the error should be viewed as harmless

---

[51] *Blakley*, 581 F.3d at 407-08.

[52] *Id.* at 408.

[53] *Id.*

[54] *Id.* at 409.

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend*, 375 F. App'x at 551-52.

[57] *Blakley*, 581 F.3d 399.

-11-

since substantial evidence exists to support the ultimate finding.[58] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[59]

In *Cole v. Astrue*,[60] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[61]

## B.  Application of standard

As noted, this case initially presents an issue concerning the application of the treating source rule and good reasons requirement, as interpreted by the case law of the Sixth Circuit. Secondarily, Cadle challenges the adequacy of the limitations addressing her moderate impairment in concentration, persistence and pace. Sixth Circuit case law also has addressed this issue.[62] Because this case can be resolved on the basis of the first issue presented, I will

---

[58] *Id*. at 409-10.

[59] *Id*. at 410.

[60] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[61] *Id.* at 940.

[62] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

-12-

discuss that matter in some detail, with additional analysis on the second issue limited to providing direction on remand.

At issue in the first instance is the opinion of Cadle's treating physician, James Johns, M.D. Under the rubric articulated in *Gayheart v. Commissioner of Social Security*,[63] and as outline above, opinions of a treating source such as Dr. Johns must be analyzed under a two-step process, with care being taken not to conflate the steps. In the first step, the opinion must be examined to determine if it is entitled to controlling weight, with that analysis considering: (1) whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) whether that opinion is not inconsistent with the other substantial evidence in the record. Only if, as a result of this analysis, the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of the treating relationship, the special expertise of the physician, and the consistency of the opinion with others. All such analyses must be articulated in a way that permits meaningful judicial review of the Commissioner's decision.

Courts have been careful to require the analysis to actually be done on the record by the ALJ, and not to be supplied later by the Commissioner in briefs and arguments.[64] While courts can accept reasoning that is not necessarily ordered in the exact sequence of the rubric and as such is found in separate parts of the ALJ's opinion, courts cannot allow the briefing

---

[63] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[64] *See*, *Hawk v. Astrue*, No. 4:11 CV 196, 2012 WL 3044291, at *6 (N.D. Ohio July 25, 2012).

-13-

skill of the Commissioner's counsel to formulate a reason – no matter how well supported by the evidence – where the ALJ actually articulated none.

Here, the ALJ arguably attempted the first step of the *Gayheart* analysis by asking whether Dr. John's opinion was entitled to controlling weight by being (1) well supported by acceptable medical and laboratory diagnostic techniques, and (2) not inconsistent with the other substantial evidence of record. Specifically, he notes that Dr. John's opinion was "inconsistent with his own treatment record, [which are] indicative of normal gait, [with] no pain or swelling," and "inconsistent with the opinion of [Cadle's] psychiatrist [Alan Midthe, M.D.], outlined in the preceding paragraph [of the opinion]."[65]

But despite the ALJ's adherence to the form of the initial *Gayheart* inquiry, Cadle initially claims that the analysis is flawed because the reasons given are not "good reasons" as that term is understood.[66] Specifically, Cadle does not argue that the reasons given are vague or are mere boilerplate lacking clear connection to particular evidence in the record, and so provide no basis for meaningful judicial review. Rather, Cadle contends that the reasons stated here – essentially normal physical and neurological findings – by their nature entirely miss the evidence supporting Cadle's fibromyalgia – the "presence of eleven of more tender points [disclosed] on exams performed by Dr. Johns and other physicians."[67]

---

[65] Tr. at 19.

[66] ECF # 25 at 3.

[67] *Id.*

In *Cohen v. Commissioner of Social Security*,[68] I recently extensively re-examined the standard for evaluating the weight to be given to a physician's opinion that involves a diagnosis of fibromyalgia that was outlined by the Sixth Circuit in *Rogers v. Commissioner of Social Security*.[69] As I noted in *Cohen*, because by its nature fibromyalgia and its limitations cannot be determined from standard objective clinical findings, the strength of any opinion here relies on the interplay of the physician's expertise with fibromyalgia and the presence of findings from tender point analysis.[70]

In that regard, as stated in *Cohen*, these cases must be viewed on a continuum, with cases involving opinions of primary care physicians with no specialty in treating fibromyalgia and containing no tender point analysis on one end, and opinions from a treating rheumatologist who performs proper tender point analysis constituting the "gold standard" on the other end.[71]

Here, it is clear initially that the record does not contain the opinion of a rheumatologist. Nevertheless, the record does include evidence of trigger point analysis and findings from that analysis consistent with fibromyalgia.

---

[68] *Cohen v. Comm'r of Soc. Sec.*, No. 1:12 CV 1351, 2013 WL 3421832 (N.D. Ohio July 8, 2013).

[69] *Rogers*, 486 F.3d 234.

[70] *Cohen*, 2013 WL 3421832, at *5 (citations omitted).

[71] *Id.*

First, as to the ALJ's statement that Dr. Johns' opinion lacks support in his own records, an August 7, 2009, note from Dr. Johns states that Cadle has "trigger points upper and lower back as described above," even without expressly detailing a full trigger point examination. In addition, the August 14, 2009, opinion itself states, presumably in reference to the note cited above, that it is based on Cadle having "multiple trigger points."[72] Thus, the ALJ's statement that Dr. Johns' opinion is inconsistent with his own findings overlooks these references to trigger point analysis.

Further, as to the statement that Dr. Johns' opinion is inconsistent with the record as a whole, the evidence is even more complex. An examination of Cadle by nurse practitioner Selena Riordan on February 15, 2010, also noted "a lot of trigger points,"[73] which is also a finding made without detailing the full results of a trigger point test. Adding to the confusion, an examination by Riordan barely two weeks before, on February 7, described Cadle as suffering from "quite a complex set of symptoms that [are?] believe[d?] to be stemming from her fibromyalgia," but which further found "no specific trigger points" due to the fact that "the complexity of the pain is all over her body."[74]

---

[72] Tr. at 298.

[73] *Id*. at 333.

[74] *Id.* at 336.

-16-

In addition, although internist Trung Lam, M.D. diagnosed fibromyalgia in April, 2010 (a factor in the record which would support the conclusion of Dr. Johns), Dr. Lam specified that this was a "diagnosis by exclusion"[75] and not as the result of any trigger point or other clinical test, thus potentially weakening the strength of his supporting diagnosis.

Thus, without a more detailed consideration and discussion of the evidence listed above I cannot conclude that the ALJ's reasons for discounting the opinion of Dr. Johns are actually supported by good reasons or not. In such a case, the analysis that is lacking must be initially done by the ALJ and not the court, and that analysis must then provide a basis for meaningful judicial review. As shown, because that analysis has not been supplied by the ALJ, meaningful judicial review cannot happen now.

## Conclusion

Accordingly, for the reasons stated, the decision of the Commissioner is reversed on the grounds that is not supported by substantial evidence. Thus, the matter is remanded with instructions to more fully develop the analysis regarding Dr. Johns' opinion in line with the standard set forth in *Gayheart*. In addition, on remand, the ALJ is directed to address Cadle's argument that restricting her to non-detailed three to four step instructions does not comply

---

[75] *Id*. at 399.

-17-

with the restrictions required in *Ealy v. Commissioner of Social Security*[76] for those with moderate limitations in concentration, persistence, and pace.

       IT IS SO ORDERED.

Dated: September 12, 2013            s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

---

[76] *Ealy*, 594 F.3d 504. For additional discussion regarding the application of *Ealy*, *see Makan v. Covlin*, 5:12 CV 31, 2013 WL 990824 (N.D. Ohio Mar. 7, 2013); *Raymond v. Comm'r of Soc. Sec.*, No. 1:11 CV 156, 2012 WL 2872152 (N.D. Ohio June 4, 2012), adopted, *Raymond v. Comm'r of Soc. Sec.*, No. 1:11 CV 156, 2012 WL 2872462 (N.D. Ohio July 12, 2012).